**SEPTEMBER TERM, 2016**

---

# APPEAL NO. 15-5238

————————————

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————————————

# RONALD SMITH

**Appellant,**

**vs.**

# UNITED STATES OF AMERICA, et al

**Appellees,**

————————————

# APPELLANT'S BRIEF
————————————

**ON APPEAL FROM THE U.S. DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

————————————

**GREGORY L. LATTIMER, ESQ.
LAW OFFICES OF GREGORY L. LATTIMER, PLLC
1200 G Street, N.W., Suite 800
Washington, D.C. 20005
Telephone No.: (202) 434-4513**

*Counsel for Appellant*

## CERTIFICATE AS TO PARTIES, RULING AND RELATED CASES

**Parties And Amici**

Ronald Smith  - Appellant
United States of America - Appellee
Officer Corey Rogers - Appellee
Officer Lawrence Anyaso - Appellee

All parties appeared before the District Court.  There was no Amici before

the District Court or this Court.

**Rulings Under Review:**

The District Court's Orders (Docket Nos. 25 and 26) granting Appellees'

Motion to Dismiss, or in the Alternative, For Summary Judgment.

**Related Cases:**

This case was not previously before this court.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................................................iii

I.  STATEMENT OF ISSUES PRESENTED FOR REVIEW...........................1

II.  STATEMENT OF RELEVANT FACTS.....................................................1

III.  STANDARD OF REVIEW........................................................................5

    A. Summary Judgment...........................................................................5

    B.  Qualified Immunity ........................................................................6

IV.    SUMMARY OF ARGUMENT.................................................................7

V.    ARGUMENT

    A.    It Is Well Established That Summary
        Judgment Is Inappropriate Prior
        To Providing the Non-Movant an
        Opportunity to Conduct Discovery .....................................8

    B.    Inadmissble Hearsay Can Never Provide
        a Platform for Granting Summary Judgment.....................10

    C.    There Is No Authority Supporting the
        Proposition That Police Officers Who
        Intentionally Falsify Police Reports
        in Order to Support a Baseless Arrest
        Are Entitled to Qualified Immunity ..................................11

    D.    There Are No Undisputed Facts Establishing
        Probable for Appellant's Arrest or Prosecution.................15

    E.    The Conduct of the Appellee Officers in
        this Case Was Nothing Short of Outrageous..................18

**VI.    CONCLUSION**...............................................................................20

# TABLE OF AUTHORITIES

**Case**:

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157(1970) ...........................................6

***Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274,
(D.C. Cir. 1997)......................................................................................................9

***Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 250 n.5 (1986).....................6, 8, 17

*Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006) .............................5

*Briggs v. Malley, supra.*, at 475 U.S. 341................................................................15

*Carter v. George Washington Univ.*, 387 F.3d 872, 880 (D.C. Cir. 2004)...............10

*Celotex v. Catrett*, 477 U.S.317, 322 (1986)........................................................7-8

*Dellums v. Powell*, 566 F.2d 167, 175, (D.C. Cir. 1977).........................................12

***Dingle v. District of Columbia*, 571 F. Supp. 2d 87, 95 (D.D.C. 2008).................17

*District of Columbia v. Murphy*, 632 A.2d 34, 37 (D.C. 1993)....................................17

***District of Columbia v. Tulin*, 994 A.2d 788, 800-01 (D.C. 2010) .................19, 20

***Enders v. District of Columbia*, 4 A.3d 457, 469 (D.C. 2010)...............................17

*First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380(D.C. Cir. 1988)........9

***Gleklen v. Democratic Congressional Campaign Committee, Inc.*,
199 F.3d 1365, 1369 (D.C. Cir. 2000).................................................................10-11

*Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).............................................11

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)......................................................7

*Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45
(4th Cir. 2002) ...................................................................................9

***Malley v. Briggs**, 475 U.S. 335 (1986)...............................................12, 15

*Martin v. Malhoyt*, 830 F.2d 237, 262(D.C. Cir. 1987).........................12

*Ortiz v. Jordan*, 131 S. Ct. 884, 888, (2011)........................................6-7

*Pearson v. Callahan, 555 U.S. 223, 231 (2009).....................................7

*Ragsdale v. Holder*, 668 F.Supp. 2d 7, 16 (D.D. C. 2009)...................11

*Rice v. District of Columbia*, 774 F. Supp. 2d 18, 23 (D.D.C. 2011).....................16

*Richardson v. National Rifle Association*, 871 F. Supp. 499 (D.D.C. 1994) ...........6

*Saucier v. Katz*, 533 U.S. 194, (2001).................................................7

*Scott v. District of Columbia*, 101 F.3d 748, 753, (D.C. Cir. 1997)..........................12

*Snook v. Trust Co. of Ga. Bank of Savannah*, 859 F.2d 865, 870
(11th Cir. 1988) ................................................................................7

*Visa Int'l Serv. Ass'n v. Bankcard Holders*, 784 F.2d 1472, 1475
(9th Cir. 1986) ..................................................................................7

*Washington Post Co. v. U.S. Dept. of Health and Human Services*,
865 F.2d 320, 325 (D.C. Cir. 1989).....................................................6

## Federal Rules of Civil Procedure

Fed.R.Civ.P. Rule 26.........................................................................8

*Fed.R.Civ.P. Rule 56.........................................................................16

Fed.R.Civ.P. Rule 56(a)......................................................................5

Fed.R.Civ.P. 56(d)..................................................................................................10

Fed.R.Civ.P. Rule 56(e)......................................................................................8, 10

Fed.R.Civ.P. Rule 56(f).............................................................................................8

**<u>Miscellaneous:</u>**

D.C. Code §16-802 ...................................................................................................4

\*  Authority principally relied upon is marked with an asterisk.

## I.  STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.  Did the trial court err when it considered the Appellees' motion for summary judgment prior to providing the Appellant an opportunity to conduct discovery?

2. May inadmissible hearsay provide a basis for summary judgment?

3. Is qualified immunity available to police officers who intentionally falsify police reports in order to support a bogus arrest?

4.  Was summary judgment properly granted in the absence of any undisputed facts supporting probable cause for the Appellant's arrest and/or prosecution?

5.  Did the trial court err when it determined that the Appellant's complaint failed to adequately set forth a claim for intentional infliction of emotional distress?

## II.  STATEMENT OF RELEVANT FACTS

On November 5, 2009, the Appellant was working as a driver for a federal government agency.  During the course of performing his duties and responsibilities, the Appellant was operating a vehicle in the area of Delaware and Constitution Avenues NE, in the District of Columbia.  As the Appellant dropped off his passengers, who were highly placed officials with the Commodities Futures Trading Commission, he was approached by Appellee Rogers who began to chastise and yell at him for dropping off his passengers at that location.

After engaging in a conversation with Appellee Rogers for about a minute or

so, the Appellant pulled off and left the area. However, Appellee Rogers radioed his colleagues and falsely reported that the Appellant had intentionally tried to hit him with his vehicle and later completed several documents wherein he indicated that he had in fact been struck by Appellant's vehicle on the back of his left leg, knowing this to be untrue.

As a result of the blatant falsehood that Appellee Rogers broadcast over the radio, the Appellant was stopped at Louisiana and Constitution Avenues NW. While there, Appellee Rogers arrived at that location and once again falsely represented that it was in fact the Appellant who had assaulted him with his vehicle. As a result of the false representations of the Appellee officers and others, the Appellant was arrested and charged with assault with a deadly weapon and assault on a Police Officer.

The Appellant was arrested by Appellee Anyaso who wrote a report wherein he advised that he viewed CCTV footage of the encounter between the Appellant and Appellee Rogers "that was consistent with" what Appellee Rogers had reported had occurred. At the time that Appellee Anyaso wrote that there was CCTV footage consistent with what Appellee Rogers had reported, he knew such information to be false. In fact, he knew at that time that Appellee Rogers had lied about what had occurred and yet, he still subjected the Appellant to further detention and filled out paperwork initiating the prosecution of the Appellant on charges that he knew were

entirely without basis.

In fact, the CCTV footage that recorded the encounter between the Appellant and Appellee Rogers clearly and unequivocally shows that at no time did the Appellant attempt to strike Appellee Rogers with a vehicle and clearly and unequivocally shows that the Appellant did not strike the left leg of Appellee Rogers with his vehicle as alleged. Despite the fact that the CCTV footage shows that Appellee Roger's left leg could not possibly have been struck by the vehicle being driven by the Appellant, Appellee Rogers, in an attempt to bolster his lie about the Appellant's actions, not only reported that his left leg had been struck by the Appellant's vehicle, he also completed paperwork claiming "Temporary Disability" for a non-existent injury that he suffered as a result of allegedly having a "car brush the back of my left leg." JA 130.

Because of the false representations contained in the contrived reports of Appellees Rogers and Anyaso, the Appellant was held in jail overnight, forced to defend himself against bogus charges in a criminal case that placed his liberty at stake. After this matter was set for hearing and/or trial for November 30, 2009, December 14, 2009, January 5, 2010, February 16, 2010, February 24, 2010, March 3, 2010 and April 22, 2010, the government moved to dismiss the case. The criminal prosecution of the Appellant was dismissed with prejudice on April 22, 2010, a little

-3-

over five(5) months after it was begun.

In a motion filed on April 22, 2011, the Appellant moved the Honorable Harold L. Cushenberry, Jr., Associate Judge of the Superior Court for the District of Columbia, who had presided over the bogus criminal prosecution of the Appellant, to seal his arrest record pursuant to D.C. Code §16-802 (Sealing criminal records on ground of actual innocence).  In a response filed on June 28, 2011, the government conceded the motion and informed Judge Cushenberry of the following:

> Additionally, the government states that it has reviewed the facts in the instant case, and believes that this Court can find, by a preponderance of the evidence, that the defendant did not commit the offense for which he was arrested.

JA 133.  Judge Cushenberry entered an order on June 30, 2011, granting the Appellant the relief that he requested, wherein he opined:

> The Court credits defendant's version of the events that led up to his arrest, and finds by a preponderance of the evidence that the defendant did not commit the offense for which he was arrested.

Opp. to Motion for Summ. Affirmance Exhibit 3.

Despite this earlier admission, and the order of the Superior Court that amounted to collateral estoppel, the Appellees moved the trial court to dismiss the complaint below prior to providing the Appellant even one day of discovery.

# III.  STANDARD OF REVIEW

## A. Summary Judgment

In general, summary judgment should be granted only if "there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  This Court in *Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006), clearly and succinctly set forth the applicable standard of review:

> We review *de novo* a district court's decision to grant summary judgment. Summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." And, with respect to materiality, "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

> Although a jury might ultimately decide to credit the version of the events described by defendants over that offered by the plaintiff, "this is not a basis upon which a court may rest in granting a motion for summary judgment." "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" ruling on a motion for summary judgment. And, in assessing a motion for summary judgment, a court must view all of the evidence in the light most favorable to the nonmoving party. [citations omitted].

It has been consistently held that the moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157(1970); *Richardson v. National Rifle Association*, 871 F. Supp. 499 (D.D.C. 1994). Accordingly, a moving party is entitled to a summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issues of material fact and that the moving parties is entitled to judgment as a matter of law. *Id*.

As all inferences drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party, the defendants' burden is substantial. *Washington Post Co. v. U.S. Dept. of Health and Human Services*, 865 F.2d 320, 325 (D.C. Cir. 1989).

Generally, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to [her] opposition." *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 250 n.5 (1986).

### B. Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ortiz v.*

-6-

*Jordan*, 131 S. Ct. 884, 888, (2011); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court in *Saucier v. Katz*, 533 U.S. 194, (2001), established a two-step test for determining whether a government official is entitled to qualified immunity. First, the court asks whether "the facts alleged show the officer's conduct violated a constitutional right." 533 U.S. at 201. If so, then the court must determine "whether the right was clearly established" at the time of the alleged violation. *Id*. The Supreme Court has since clarified that "the sequence set forth in Saucier," although "often appropriate," is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Courts may "exercise their sound discretion" in deciding which question to address first "in light of the circumstances in the particular case at hand." *Id*.

## IV.  SUMMARY OF ARGUMENT

The decision of the trial court to dismiss Appellant's cause of action stands Rule 56 on its head, condones false police reports, disregards Supreme Court precedent on the issue of qualified immunity, and completely distorts existing District of Columbia law on the issue of intentional infliction of emotional distress. Summary Judgment was clearly not warranted under such circumstances and in fact, reversal of the trial court's determination is more than warranted, it is mandated.

## V.  ARGUMENT

### A.    It Is Well Established That Summary Judgment Is Inappropriate Prior To Providing the Non-Movant an Opportunity to Conduct Discovery

It is well settled that as a general rule, granting summary judgment prior to the completion of all discovery is inappropriate.  *Snook v. Trust Co. of Ga. Bank of Savannah*, 859 F.2d 865, 870 (11th Cir. 1988); *Visa Int'l Serv. Ass'n v. Bankcard Holders*, 784 F.2d 1472, 1475 (9th Cir. 1986).

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, **after adequate time for discovery** and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  [Emphasis added].

*Celotex v. Catrett*, 477 U.S.317, 322 (1986). The Supreme Court has also indicated that *Rule 56(e)*'s requirement that the party opposing a summary judgment motion set forth specific facts showing that there is a genuine issue for trial "is qualified by *Rule 56(f)*'s provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Liberty Lobby. Inc*., 477 U.S. at 250 n.5. That would appear to be even more applicable prior to entry of a scheduling order in a civil case inasmuch as under Rule 26 of Federal Rules of Civil Procedure, no discovery can take place until a scheduling

order has been put in place.

> Generally speaking, "summary judgment [must] be refused
> where the nonmoving party has not had the opportunity to
> discover information that is essential to his opposition." At
> the same time, the party opposing summary judgment
> "cannot complain that summary judgment was granted
> without discovery unless that party had made an attempt to
> oppose the motion on the grounds that more time was
> needed for discovery." If a party believes that more
> discovery is necessary for it to demonstrate a genuine issue
> of material fact, the proper course is to file a Rule 56(f)
> affidavit stating "that it could not properly oppose a motion
> for summary judgment without a chance to conduct
> discovery." [citations omitted].

*Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002).

This Court too has made clear that summary judgment "ordinarily 'is proper only

after the plaintiff has been given adequate time for discovery.'" *Americable Int'l, Inc.*

*v. Dep't of Navy*, 129 F.3d 1271, 1274, (D.C. Cir. 1997) (quoting *First Chicago Int'l*

*v. United Exch. Co*., 836 F.2d 1375, 1380(D.C. Cir. 1988).

In this case, the trial court declined to provide any discovery to the Appellant

even though advised that the Appellant was unable to fully and completely respond

to the motion for summary judgment filed in the case, which was fact intensive,

without being provided an opportunity to conduct discovery. Indeed, the Appellant

advised the trial court of the following in this regard:

At a minimum, the plaintiff needs to depose the two(2) named defendant

> officers to ascertain why they took the actions that they took at the time
> that they did so; and the plaintiff needs to depose Ms. Barnhardt about
> her actual observations which are somewhat at odds with the video.

JA 116. In addition, the Appellant submitted an Affidavit from counsel, consistent

with Rule 56 (d), JA 142-43, that the trial court simply ignored. When the trial court

considered the motion for summary judgment prior to affording the Appellant an

opportunity to conduct discovery, it erred as a matter of law. *Anderson v. Libby*

*Lobby, supra.*

### B.    Inadmissble Hearsay Can Never Provide
###       <u>A Platform for Granting Summary Judgment</u>

In the trial court, the Appellees attempted to support their motion with two (2)

affidavits, neither of which established that they were entitled to summary judgment,

and a plethora of police reports that were nothing more than rank hearsay. Too be

sure, a trial court cannot consider inadmissible hearsay evidence in the context of a

motion for summary judgment that has been presented by one party. *Carter v. George*

*Washington Univ.*, 387 F.3d 872, 880 (D.C. Cir. 2004).

This Court has been unequivocal,

> Verdicts cannot rest on inadmissible evidence. Gleklen's evidence about
> the conversation is sheer  hearsay; she would not be permitted to testify
> about the conversation at trial. It therefore counts for nothing. [Citations
> omitted].

*Gleklen v. Democratic Congressional Campaign Committee, Inc.*, 199 F.3d 1365,

-10-

1369 (D.C. Cir. 2000). With respect to documents, they too require more than just the movant dumping them in the lap of the Court:

> [T]o be considered for or against summary judgment, a document must be authenticated, either by an affidavit that meets the requirements of *Rule 56(e)* [of the] Federal Rules of Civil Procedure, or in accord with the Federal Rules of Evidence. Indeed, for the Court to accept anything less would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial.

*Greene v. Dalton*, 164 F.3d 671, 675(D.C. Cir. 1999); *Ragsdale v. Holder*, 668 F.Supp. 2d 7, 16 (D.D. C. 2009). The motion for summary judgment filed in the trial court was almost entirely supported by inadmissible police reports that should have been stricken and not considered by the trial court.

It is somewhat rudimentary that if the trial court was inclined to give consideration to the contrived and inadmissible police reports that were submitted by the Appellees, it should have at least afforded the Appellant an opportunity to demonstrate the lack of trustworthiness of those documents through discovery. For reasons that are not clear, the trial court did not do that, instead it chose to ignore applicable law in that regard.

### C.    There Is No Authority Supporting the Proposition That Police Officers Who Intentionally Falsify Police Report in Order to Support a Baseless Arrest  Are Entitled to Qualified Immunity

The Appellee officers claimed that they were entitled to qualified immunity.

-11-

"The elements of a constitutional claim for false arrest are substantially identical to the elements of a common-law false arrest claim." *Scott v. District of Columbia*, 101 F.3d 748, 753, (D.C. Cir. 1997). In either, the central inquiry is identical: was the arresting officer justified in ordering the arrest of the plaintiff? *Dellums v. Powell*, 566 F.2d 167, 175, (D.C. Cir. 1977). If the arrest was justified then "the conduct of the arresting officer is privileged and the action fails." *Id*. Because "[j]ustification can be established by showing that there was probable cause for arrest of the plaintiff on the grounds charged," *id*., "[m]ost false arrest claims turn on the issue of whether the arresting officer had probable cause," *Scott, supra., 101 F.3d at 754*.

On the other hand, "It is well settled that an arrest without probable cause violates the *fourth amendment*." *Martin v. Malhoyt*, 830 F.2d 237, 262(D.C. Cir. 1987). Having said all of that, the Appellant, who had in fact asserted a common law false arrest claim, for which the lack of probable cause will be discussed *infra*., reminded the trial court that his constitutional claim was alleged to be an unconstitutional seizure that was precipitated by false police reports completed by the named officers, not unlike the plaintiffs in *Malley v. Briggs*, 475 U.S. 335 (1986). In other words, it was not only based upon the fact that no probable cause existed for the arrest of the Appellant, it is also based upon the constitutional tort theory of "Perjurer's Liability." Specific examples of that perjury were identified in the

exhibits that the Appellant submitted along with his opposition to the inappropriately considered motion for summary judgment:

### JA 126-127 - PD 163 Completed by Anyaso

Page 1 box 54 - "Defendant operates Vehicle in DC while intentionally striking police officers with his vehicle." There was absolutely no evidence of any kind that supported this knowingly false statement.

Page 2 - "A/O reviewed CCTV footage that was consistent with what C-1 reported." According to Appellee Anyaso, C-1 was Appellee Rogers and he reported that the Appellant "drove towards C-1 as he made a wide turn at a high rate of speed grazing C-1 in the left leg." The contention by Appellee Rogers that the Appellant struck, grazed, and/or brushed his left leg with the vehicle that he was driving is unequivocally untrue. All one need do is view the video that was submitted as an Exhibit to Appellees' motion at 4:29:48 p.m. to 4:29:51 p.m. and focus one's attention on defendant Rogers' left leg. JA 63. The irrefutable fact established by that video is that Appellee Rogers had his hand in his left pocket the entire time, his right leg was between Appellant's vehicle and his left leg, and the Appellant did not and could not have come close to striking, grazing and/or brushing Appellee Rogers' left leg with his vehicle as represented. Therefore, when Appellee Anyaso reported that the video was consistent with what C-1 (Rogers) reported, he was undeniably

-13-

lying as Appellant has maintained from the outset.

### JA 128-29-CP 319 Complainant/Witness Statement of Appellee Rogers

In his statement, Appellee Rogers stated "The driver then put the vehicle in gear and squealed his tires and drove at a fast rate of speed at me. As I turned to get out of the way I felt something brush the back portion of my left leg." The video does not support the contention that the Appellant drove his vehicle at Appellee Rogers and it clearly does not support the suggestion that the Appellant "brushed" the back of his left leg.

### JA 130 - Report of Temporary Disability

Appellee Rogers prepared a report claiming disability as a result of the car brushing his left leg. The video indicates that this representation was a blatant falsehood.

The actions of the reporting officers were undertaken to assure that the charges being leveled against the Appellant stuck, to assure that he was held, and to assure that he was prosecuted, because the Appellees knew that if they reported the truth, the case against the Appellant would not be prosecuted. This is supported by the Memorandum of Sgt. Roby K. Kennedy. In paragraph 4 of the memorandum Sgt. Roby discusses what Appellee Rogers said on November 5, 2009, when he first

discussed the incident with him. "The fucken Asshole almost hit me," as he held up his index finger and thumb approximately an inch apart. On the second page of his memorandum, Sgt. Kennedy reported that after completing his witness statement - "Officer Rogers then told me that the suspect vehicle had brushed his leg and it was starting to hurt." JA 131-32. In other words, Sgt. Kennedy documented the lie that Appellee Rogers was perpetrating.

This is the conduct that the Appellees urged the trial court to excuse on the basis of qualified immunity. The Supreme Court, however, teaches otherwise when it noted that "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Briggs, supra*., at 475 U.S. 341. The Appellee officers, who were the complaining witnesses against the Appellant, clearly were not entitled to the protections of the qualified immunity defense as they clearly and unequivocally violated the law by providing false statements to justify an arrest. "I fully understand that making a false statement is punishable by criminal penalties." JA 129 (Box 15).

### D.    There Are No Undisputed Facts Establishing <u>Probable for Appellant's Arrest or Prosecution</u>

There is not a single undisputed fact that supports the Appellees' position that probable cause existed for the Appellant's arrest or prosecution for any offense. JA

135-41.  The referenced documents consist of the Affidavit of the Appellant wherein he explains the position of his wheels and his intentions, and the still photographs taken from the CCTV footage clearly showing that the wheels on the Appellant's vehicle remained in the same position, turning left, throughout his encounter with Appellee Rogers.

Moreover, the video recording depicting the event indicates that plaintiff's vehicle never struck, grazed or brushed defendant Rogers' leg.  JA 63, JA 137-41. These are the only undisputed facts in this case.  As the Appellant's Affidavit and the still photographs indicate, he never struck Appellee Rogers with his vehicle, he never attempted to strike Appellee Rogers with his vehicle, he did not drive his vehicle toward Appellee Rogers in an attempt to intimidate, scare or assault him and in fact, he never intentionally drove his vehicle in the direction of Appellee Rogers for any purpose at all.  JA 135.

Conspicuously, it is not even alleged by the Appellees that any fact purporting to constitute probable cause was undisputed.  Without an undisputed material fact supporting their contention that probable cause existed to arrest the Appellant, summary judgment cannot and should not have been granted.  F.R.C.P. 56.  "Where the material facts are undisputed, the question of probable cause is a legal question." *Rice v. District of Columbia*, 774 F. Supp. 2d 18, 23 (D.D.C. 2011).  "It is only where

the facts are undisputed or clearly established that probable cause becomes a question of law for the court." *Enders v. District of Columbia*, 4 A.3d 457, 469 (D.C. 2010). It is also significant to note that it is well established that "A court's power to make probable cause determinations is limited at the summary judgment stage, and the trial court should usually leave such questions for the jury's deliberation." *Dingle v. District of Columbia*, 571 F. Supp. 2d 87, 95 (D.D.C. 2008). See also, *District of Columbia v. Murphy*, 632 A.2d 34, 37 (D.C. 1993)(In a false arrest case, the issue of probable cause is a mixed question of fact and law that the trial court should ordinarily leave to the jury).

Moreover, a plaintiff need only provide sufficient facts and evidence from which a reasonable jury could return a verdict in his favor. *Liberty Lobby, supra,* at 477 U.S. 248. There can be no serious contention that a reasonable jury could not find in favor of Appellant with respect to each of his claims for relief upon review of the video and if the Appellant's version of events, as set forth in his Affidavit are accepted as true.

Furthermore, the presiding judge over the criminal proceeding initiated against the Appellant, issued a ruling, after hearing from the government and the Appellant wherein he determined that there was no basis for the Appellant's arrest and prosecution. Opp. to Motion for Summ. Affirmance Exhibit 3. Such a ruling, clearly

prevents re-litigation of the issue of probable cause under the doctrine(s) of collateral estoppel and/or res judicata, or at the very least establishes that disputed facts exist in that regard.

### E. The Conduct of the Appellee Officers in This Case Was Nothing Short of Outrageous

The Appellant does not quarrel with the fact that he had to plead conduct on the Appellees' part that was

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

The Appellant submits that creating falsified police reports and feigning an injury in support of the seizure, overnight detention and prosecution of an individual on a knowingly bogus charge is nothing short of outrageous conduct, especially when the people engaging in such conduct are law enforcement officers who are sworn to uphold the law. The Appellant further submits that when these outrageous actions and lies are alleged to cause an individual to loose his job, to loose his security clearance, to suffer severe mental anguish and to suffer severe anxiety over the thought of possible imprisonment, the Appellant's complaint more than adequately sets forth a claim for intentional infliction of emotional distress. If the Appellant's theory of liability were to be accepted by a jury, beyond all bounds of decency in a

civilized society, is the only way to describe the Appellee Officers' conduct which is nothing if not conduct that is intolerable in a civilized society.

Indeed, the actions of the defendant officers in this case are strikingly similar to the conduct of the off-duty officer in *District of Columbia v. Tulin*, 994 A.2d 788, 800-01 (D.C. 2010) wherein "Mr. Tulin's claim for intentional infliction of emotional distress was based entirely on his theory that Detective Rauf falsely told the police that he had been driving recklessly, thus bringing about his arrest." 994 A. 2d 801. In upholding a jury award of $450,000 for intentional infliction of emotional distress in that case, the D.C. Court of Appeals explained:

> Mr. Tulin testified that the distress which he suffered, including the aggravation of a pre-existing depression, resulted entirely from his arrest, detention and criminal prosecution. If there had been no arrest or prosecution, then, as the District points out, the emotional injuries alleged by Mr. Tulin would not have occurred. Thus, Mr. Tulin's theory of intentional infliction of emotional distress -- that Detective Rauf's words and actions caused him to be arrested, and subsequently prosecuted, without legal justification -- is the only theory of intentional infliction of emotional distress which is supported by the evidence, or which was argued on behalf of Mr. Tulin.
>
> There was, at the same time, ample evidence on the basis of which the jury could reasonably find that Detective Rauf intended to cause Mr. Tulin emotional distress and that she succeeded in doing so. Detective Rauf believed -- or so she professed -- that Mr. Tulin deliberately caused the accident, notwithstanding the value of his high-priced Porsche, in order to set up a lawsuit against her. There is no doubt that she was extremely angry. Her level of "pissitivity," as she testified, was high -- enough so that she used foul and profane language in the presence, and

-19-

possibly within the hearing, of her nine-year-old son. The jury could reasonably find that a person who was so enraged had ample motivation to inflict emotional distress. Consistently with such motivation, Detective Rauf, as she left the scene, asked Officer McKoy whether this was an "automatic lock-up," arguably implying the affirmative. Further, if the jurors credited Mr. Tulin's testimony, they could fairly find that he suffered severe emotional distress (and plenty of it) in the hours, days and months that followed.

994 A.2d. 801-02.

The trial court's ruling that the Appellant's complaint failed to adequately set forth a claim for intentional infliction of motional distress was just plain wrong.

## VI. <u>CONCLUSION</u>

The decision of the trial court to dismiss Appellant's cause of action stands Rule 56 on its head, condones false police reports, disregards Supreme Court precedent on the issue of qualified immunity, and completely distorts existing District of Columbia law on the issue of intentional infliction of emotional distress. Summary Judgment was clearly not warranted under such circumstances and in fact, reversal of the trial court's determination is more than warranted, it is mandated.

-20-

Respectfully submitted,


/s/ Gregory L. Lattimer
Gregory L. Lattimer [371926]
1200 G Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 434-4513


## Certificate of Service

I HEREBY CERTIFY that a copy of the foregoing Brief was served through

the Court's ECF system, on this 14th day of March, 2016 to:

W. Mark Nebeker, Esq.
mark.nebeker@usdoj.gov

Marian L. Borum, Esq.
marian.l.borum@usdoj.gov


/s/ Gregory L. Lattimer
Gregory L. Lattimer

-21-

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## <u>F.R.A.P. 32(a)(7)( c) AND CIRCUIT RULE 32(a)(2)</u>

I certify that pursuant to F.R.App.P. 32(a)(7)( c) and District of Columbia

Circuit Rule 32(a)(2), the attached principal brief is proportionally spaced, has a

typeface of 14 points and contains 4975 words.

<u>   /s/ Gregory L. Lattimer         </u>
Gregory L. Lattimer